## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

ROOSEVELT L. MOORE,                  :

     Plaintiff,                  :

vs.                                  :          CA 16-00247-C

NANCY A. BERRYHILL,                  :
Acting Commissioner of               :
Social Security,[1]                  :

     Defendant.                 :

## MEMORANDUM OPINION AND ORDER

Social Security Claimant/Plaintiff Roosevelt L. Moore brought this

action under 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of a

final decision of the Defendant Commissioner of Social Security (the

"Commissioner") denying his applications for a period of disability ("PoD")

and disability insurance benefits ("DIB") under Title II of the Social Security

Act, 42 U.S.C. § 401, *et seq.* The parties have consented to the exercise of

jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all

proceedings in this Court. (Doc. 19 ("In accordance with the provisions of 28

U.S.C. § 636(c) and Fed. R. Civ. P. 73, the parties in this case consent to have

a United States Magistrate Judge conduct any and all proceedings in this

case, including the trial, order the entry of a final judgment, and conduct all

---

[1] Nancy A Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Pursuant to Rule 25(d), Fed. R. Civ. P., Berryhill is substituted for Carolyn W. Covin as the proper defendant in this case.

post-judgment proceedings.")).

Upon consideration of the briefs of the parties, (Docs. 13 & 16), the administrative record, (Doc. 12), (hereinafter cited as "(R. [page number(s) in lower-right corner of transcript])"), and the arguments presented during the hearing held on February 16, 2017, it is determined that the Commissioner's decision is due to be **AFFIRMED**.[2]

## I.    Background

Moore was born on November 9, 1969, (R. 185 [SSA Ex. 4E]).  The highest grade of school Moore attained was eleventh grade.  (R. 48; *but see also* (R. 190 [SSA Ex. 4E] (indicating the highest grade of school completed was twelfth grade in 1989)).  Moore was employed from 1987 to 2012 and performed jobs that included laborer, quality control inspector, truck driver, and painter.  (R. 177 [SSA Ex. 3E]).  Most recently, he worked as a truck driver from 2001 to 2012.  (R. 190 [SSA Ex. 5E]).

Moore filed applications for PoD and DIB with the Social Security Administration (the "SSA"),[3] on December 6, 2012.    (R. 20).   In Moore's

---

[2] Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals.  (*See* Docs. 19 & 20 ("An appeal from a judgment entered by a Magistrate Judge shall be taken directly to the United States Court of Appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court.")).

[3] "The Social Security Act's general disability insurance benefits program ('DIB') provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence. See 42 U.S.C. 423."  *Sanders v. Astrue*, No 11-049-N, 2012 WL 4497733, at *3 (S.D. Ala. Sept. 28, 2012).

application, he alleged disability beginning on November 30, 2012.[4]  (R. 20).

After Moore's claim was denied, he requested a hearing, which was held

before an Administrative Law Judge ("ALJ") for the SSA on June 24, 2014.

(R. 20).  On August 8, 2014, the ALJ issued an unfavorable decision on

Moore's claims, finding him "not disabled" under sections 216 (i) and 223(d) of

the Social Security Act.  (R. 17-35).

Moore requested review of the ALJ's decision by the Appeals Council

for the SSA's Office of Disability Adjudication and Review.  (R. 15-16).  The

Appeals Council denied Moore's request for review on April 28, 2016, which

made the ALJ's the final decision of the Commissioner.  (R. 1-6).  On May 25,

2016, Moore filed this action pursuant to § 405(g)[5] and § 1383(c)(3)[6] to review

the final decision of the Commissioner.  (Doc. 1, ¶ 3).

## II.　　Standard of Review

"In Social Security appeals, [the Court] must determine whether the

Commissioner's decision is supported by substantial evidence and based on

---

[4] "For DIB claims, a claimant is eligible for benefits where she demonstrates disability on or before the last date for which she [was] insured.  42 U.S.C. § 423(a)(1)(A) (2005)."  *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam).

[5] "Any individual, after any final decision of the Commissioner . . . made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner . . . may allow."  42 U.S.C. § 405(g).

[6] "The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title."  42 U.S.C. 1383(c)(3).

proper legal standards. Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citations and internal quotations omitted). The Court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." *Id.* (citations omitted). "Even if the evidence preponderates against the Commissioner's findings, [the Court] must affirm if the decision reached is supported by substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (citing *Sewell v. Bowen*, 792 F.2d 1065, 1067 (11th Cir. 1986); *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986); and *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)). "Yet, within this narrowly circumscribed role, [the Court does] not 'act as automatons.'" *Bloodsworth*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citing *Ware v. Schweiker*, 651 F.2d 408, 411 (5th Cir. 1981), *cert. denied*, 455 U.S. 912, 102 S. Ct. 1263, 71 L. Ed. 2d 452 (1982)). The Court "must scrutinize the record as a whole, [*Ware*, 651 F.2d at 411]; *Lewis v. Weinberger*, 515 F.2d 584, 586-87 (5th Cir. 1975), to determine if the decision reached is reasonable, *Simmons v. Harris*, 602 F.2d 1233, 1236 (5th Cir. 1979), and supported by substantial evidence, *Scharlow v. Schweiker*, 655 F.2d 645, 648 (5th Cir. 1981)." *Bloodsworth*, 703 F.2d at 1239.

"In contrast to the deferential review accorded to the [Commissioner's] findings of fact, the [Commissioner's] conclusions of law, including applicable

review standards are not presumed valid." *Martin*, 894 F.2d at 1529 (citing *MacGregor*, 786 F.2d at 1053; *Smith v. Heckler*, 707 F.2d 1284, 1285 (11th Cir. 1983), *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982); *Smith v. Schweiker*, 646 F.2d 1075, 1076 (5th Cir. Unit A June 1981). "The [Commissioner's] failure to apply the correct legal standard or to provide the reviewing court with sufficient basis for a determination that proper legal principles have been followed mandates reversal." *Martin*, 894 F.2d at 1529 (citing *Gibson v. Heckler*, 779 F.2d 619, 622 (11th Cir. 1986); *Bowel v. Heckler*, 748 F.2d 629, 635-36 (11th Cir. 1984); *Smith*, 707 F.2d at 1285; *Wiggins*, 679 F.2d at 1389; *Ambers v. Heckler*, 736 F.2d 1467, 1470 (11th Cir. 1984)).

> The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v); *Phillips v. Barnhart*, 357 F.3d 1232, at 1237-39 (11th Cir. 2004)).

## III.   Claims on Judicial Review

1.     "The [ALJ] reversibly erred in failing to assign controlling weight to the opinion of [Moore's] treating physicians, Jonah McIntyre, M.D.,[,] and Steven Hankins, D.O., and instead adopted her own medical opinion." (Doc. 13, at 1).

2.     "The [ALJ] committed reversible error in violation of Social Security Ruling 96-6p by failing to give adequate weight to the consulting physician, Dr. Eyston Hunte.  Dr. Hunte's opinion should be given controlling weight under Social Security Ruling 96-9p because it is consistent with the medical evidence of record."  (Doc. 13, at 2).

## IV.   Analysis

"At the first step, the ALJ must consider the claimant's current working situation.  If the claimant is 'doing substantial gainful activity, [the ALJ] will find that [the claimant is] not disabled.'"  *Phillips*, 357 F.3d at 1237 (alterations in original) (quoting 20 C.F.R. § 404.1520(a)(4)(i) & (b)).  "If however, the claimant is not currently 'doing gainful activity' then the ALJ moves on to the second step."  *Phillips*, 357 F.3d at 1237.  At the first step, the ALJ determined that Moore had "not engaged in substantial gainful activity since November 30, 2012, the alleged onset date."  (R. 22).

> At the second step, the ALJ is to "consider the medical severity of [the claimant's] impairment(s)."   20 C.F.R. § 404.1520(a)(4)(ii).   When considering the severity of the claimant's medical impairments, the ALJ must determine whether the impairments, alone or in combination, "significantly limit" the claimant's "physical or mental ability to do basic work skills."  20 C.F.R. § 404.1520(c).  If the ALJ concludes that none of the claimant's impairments are medically severe, the ALJ is

> to conclude that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(ii) & (c). If, however, the ALJ concludes that the claimant's impairments are medically severe, then the ALJ moves on to the third step.

*Phillips*, 357 F.3d at 1237 (alterations in original). At Step Two, the ALJ determined that Moore had the following severe impairments: "degenerative disc disease of the lumbar spine, carpal tunnel syndrome, hypertension, and obesity." (R. 22).

> At the third step, the ALJ again considers the "medical severity of [the claimant's] impairment(s)" in order to determine whether the claimant's impairment(s) "meets or equals" one of the listed disabilities. 20 C.F.R. § 404.1520(a)(4)(iii). Although the list is too voluminous to recite here, the idea is that the listings "streamline[ ] the decision process by identifying those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background." *Bowen v. Yuckert*, 482 U.S. 137, 153, 107 S. Ct. 2287, 2297, 96 L. Ed. 2d 119 (1987). If the ALJ concludes that the claimant's impairments meet or equal one of the listed disabilities and meet the duration requirement, the ALJ will conclude that the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(iii) & (d). If, however, the ALJ concludes that the claimant's impairments do not meet or equal the listed impairments, then the ALJ will move on to step four.

*Phillips*, 257 F.3d at 1238 (alterations in original). At Step Three, the ALJ found that Moore "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments" in 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. (R. 23).

> At the fourth step, the ALJ must assess: (1) the claimant's [RFC]; and (2) the claimant's ability to return to her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). As for the claimant's RFC, the regulations define RFC as that which an individual is still able to do despite the limitations caused by his or her impairments. 20 C.F.R. § 404.1545(a). Moreover, the

ALJ will "assess and make a finding about [the claimant's RFC] based on all the relevant medical and other evidence" in the case. 20 C.F.R. § 404.1520(e). Furthermore, the RFC determination is used both to determine whether the claimant: (1) can return to her past relevant work under the fourth step; and (2) can adjust to other work under the fifth step . . . . 20 C.F.R. § 404.1520(e).

If the claimant can return to her past relevant work, the ALJ will conclude that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv) & (f). If the claimant cannot return to her past relevant work, the ALJ moves on to step five.

In determining whether [a claimant] can return to her past relevant work, the ALJ must determine the claimant's RFC using all relevant medical and other evidence in the case. 20 C.F.R. § 404.1520(e). That is, the ALJ must determine if the claimant is limited to a particular work level. *See* 20 C.F.R. § 404.1567. Once the ALJ assesses the claimant's RFC and determines that the claimant cannot return to her prior relevant work, the ALJ moves on to the fifth, and final, step.

*Phillips*, 357 F.3d at 1238-39 (alterations in original) (footnote omitted). At

the fourth step, the ALJ assessed that Moore had the RFC:

[T]o perform less than a full range of light work as defined in 20 C.F.R. 404.1567(b). [Moore] can lift and carry 20 pounds occasionally and 10 pounds frequently. He can stand for one hour at a time for a total of two hours in an eight-hour workday. He can sit two hours at a time for a total of four hours in an eight-hour workday. He can walk two hours at a time for a total of two hours in an eight-hour workday. He can frequently reach, handle, finger, and feel. He can occasionally push and pull. He can occasionally balance, stoop, kneel, crouch, and crawl. He can occasionally work with moving equipment and be exposed to temperature extremes, humidity and wetness, and concentrated environmental pollutants such as dust, chemicals, and fumes. He can occasionally climb stairs and ramps but is precluded from climbing ladders, ropes, and scaffolds. He is precluded from working unprotected heights or around vibrations. He can work in very quiet, quiet, and moderate hearing environments but is precluded from loud or very loud environments, as all are defined in the Dictionary of Occupational Titles. The claimant

requires a cane to walk distances greater than 100 feet. The claimant should avoid tasks involving a variety of instructions or tasks but is able to understand and carry out simple one and two step instructions and is able to understand and carry out detailed but uninvolved written or oral instructions involving a few concrete variables in or from standardized situations.

(R. 24). The ALJ determined Moore is "unable to perform any past relevant work." (R. 29).

At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine whether the claimant "can make an adjustment to other work." 20 C.F.R. § 404.1520(a)(4)(v). Essentially, the ALJ must determine if there is other work available in significant numbers in the national economy that the claimant has the ability to perform. If the claimant can make the adjustment to other work, the ALJ will determine the claimant is not disabled. If the claimant cannot make the adjustment to other work, the ALJ will determine that the claimant is disabled.

There are two avenues by which the ALJ may determine whether the claimant has the ability to adjust to other work in the national economy. The first is by applying the Medical Vocation Guidelines.

Social Security regulations currently contain a special section called the Medical Vocational Guidelines. 20 C.F.R. pt. 404 subpt. P, app. 2. The Medical Vocational Guidelines ("grids") provide applicants with an alternate path to qualify for disability benefits when their impairments do not meet the requirements of the listed qualifying impairments. The grids provide for adjudicators to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each of these factors can independently limit the number of jobs realistically available to an individual. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled."

The other means by which the ALJ may determine whether the claimant has the ability to adjust to other work in the national economy is by the use of a vocational expert. A

vocational expert is an expert on the kinds of jobs an individual can perform based on his or her capacity and impairments. When the ALJ uses a vocational expert, the ALJ will pose hypothetical question(s) to the vocational expert to establish whether someone with the limitations that the ALJ has previously determined that the claimant has will be able to secure employment in the national economy.

*Phillips*, 357 F.3d at 1239-40 (footnotes omitted). At step five, the ALJ determined that, given Moore's RFC, age, education, and work experience, "there are jobs that exist in significant numbers in the national economy that [Moore] can perform" based on the testimony of the vocational expert, who opined that, based on Moore's limitations, he could perform the jobs of bench assembler, garment folder, and surveillance monitor. (R. 30). Accordingly, the ALJ found that Moore "has not been under a disability, as defined in the Social Security Act, from November 30, 2012, through the date of [the ALJ's] decision." (R. 30).

## A.    Claim 1

"'Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairments(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairments(s), and [the claimant's] physical or mental restrictions.'" *Winschel*, 631 F.3d at 1178-79 (alterations in original) (quoting 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2)). "The law of this circuit is clear that the testimony of a treating physician must be given substantial or considerable

weight unless 'good cause' is shown to the contrary." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citations omitted); *see also* 20 C.F.R. 404.1527(d)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations."). "'[G]ood cause' exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips*, 357 F.3d at 1240-41. "When electing to disregard the opinion of a treating physician, the ALJ must clearly articulate its reasons." *Id.* at 1241. "Where the ALJ articulate[s] specific reasons for failing to give the opinion of a treating physician controlling weight, and those reasons are supported by substantial evidence, there is no reversible error." *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005).

> Moreover, the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor. *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987) (per curiam). "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). Therefore, when the ALJ fails to "state with at least

some measure of clarity the grounds for his decision," we will decline to affirm "simply because some rationale might have supported the ALJ's conclusion." *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam). In such a situation, "to say that [the ALJ's] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Cowart*, 662 F.2d at 735 (quoting *Stawls v. Califano*, 596 F.2d 1209, 1213 (4th Cir. 1979)) (internal quotation marks omitted).

*Winschel*, 631 F.3d at 1179 (alterations in original).

Moore argues the ALJ reversibly erred when she did not assign controlling weight to the opinions of Moore's treating physicians, Dr. McIntyre and Dr. Hankins. (Doc. 12, at 1-2). Discharging the requirement that the ALJ "state with particularity the weight given to different medical opinions and the reasons therefore[,]" *Winschel*, 631 F.3d at 1179, she assigned weight to the opinion of Dr. McIntyre, which was stated in a form dated November 7, 2013, (R. 308 [SSA Ex. 9F]), and the reasons therefor as follows:

The undersigned has considered but gives little weight to the November 2013 opinion of Jonah McIntyre, M.D., who indicates that the claimant is unable to work 40 hours per week without missing more than two days per month and that physical activity will increase the claimant's symptoms and cause distraction from or total abandonment from task (Exhibit 9F). Additionally, Dr. McIntyre also notes, "[low back pain] disables [the claimant] from employment." However, any opinion regarding the claimant's ability to work full-time in a competitive environment is an opinion reserved to the Commissioner (20 CFR 404.1513 and 404.1527). This opinion also fails to identify functional limitations caused by the claimant's identified impairments, making it purely conclusory. Further, Dr. McIntyre's opinion is inconsistent with the overall evidence of record, including the examination findings and

opinion of Dr. Hunte, as well as the claimant's admitted and indicated activities and abilities, which include driving, preparing breakfast, and shopping in stores.

(R.28). She, also, assigned weight to the opinion of Dr. Hankins, which was stated in a form titled "Medical Examiner's Certificate" dated May 20, 2013, (R. 348 [SSA Ex. 14F]), and the therefore as follows:

> The undersigned has also considered but gives no weight to the May 2013 opinion of Steven Hankins, D.O., that [ ] the claimant was unable to perform the essential functions of his job at Reynold's Ready Mix due to high blood pressure, limited range of motion, an unsteady gait, and the use of pain medications (Exhibit 14F). Again, any opinion regarding the claimant's ability to work full-time in a competitive environment is an opinion reserved to the Commissioner (20 CFR 404.1513 and 404.1527). Also, Dr. Hankins' opinion refers only to the claimant's job at Reynold's Ready Mix, not to other jobs in the national economy, and the undersigned has determined that the claimant is unable to perform any of his past work (See Finding 6, below). This opinion fails to identify the functional limitations, rendering it conclusory in nature. Accordingly, the undersigned gives it no weight.

(R. 28). Thus, the ALJ determined Dr. McIntyre's opinion was conclusory and not bolstered by the evidence and Dr. Hankins's opinion was conclusory.

Moore argues the ALJ failed to show good cause for rejecting the opinions of Drs. Hankins and McIntyre. (*See* Doc. 13, at 2-7). The reasons stated by the ALJ for assigning little weight to Dr. McIntyre's opinion are "[Dr. McIntyre's] opinion fails to identify functional limitations caused by [Moore's] identified impairments," and "Dr. McIntyre's opinion is inconsistent with the overall evidence of record, including the examination findings and opinion of Dr. Hunte, as well as the claimant's admitted and indicated

activities and abilities, which include driving, preparing breakfast, and shopping in stores." (R. 28). The reasons stated by the ALJ for assigning no weight to Dr. Hankins's opinion are "Dr. Hankins' opinion refers only to the claimant's job at Reynold's Ready Mix, not to other jobs in the national economy" and "[his opinion fails to identify the functional limitations, rendering it conclusory in nature." (R. 28). Drs. Hankins's and McIntyre's opinions are similar in that they are conclusory, according to the ALJ.

The opinion in the form dated November 7, 2013, (R. 308 [SSA Ex. 9F]), with which the ALJ takes issue is the extent physical activity would increase Moore's symptoms and Moore's ability to engage in any form of gainful employment, (R. 28). Specifically, Dr. McIntyre opined "physical activity, such as walking, standing, lifting, bending, stooping, repetitive moving of extremities, [etcetera]," "[g]reatly increase Moore's symptoms and cause distraction from task or total abandonment of task," (R. 308 [SSA Ex. 9F]), and Moore cannot "engage in any form of gainful employment on a repetitive, competitive and productive basis over an eight hour work day, forty hours a week, without missing more than [two] days of work per month or experiencing frequent interruptions to [his] work routine due to symptoms of [his] disease or medical problems," (R. 308 [SSA Ex. 9F]). Dr. McIntyre noted Moore's lower back pain "disables [Moore] from employment." (R. 308 [SSA Ex. 9F]). The opinion in the "Medical Examiner's Certificate" form dated May 20, 2013, (R. 348 [SSA Ex. 14F]), with which the ALJ takes issue

is Dr. Hankins's opinion "[Moore] is NOT qualified to perform the essential function of [his Reynolds Ready Mix] job" because of high blood pressure, a limited range of motion, unsteady gait, and daily use of a cane. (R. 348 [SSA Ex. 14F]).

At the outset, the Court notes the opinions of Drs. Hankins and McIntyre are not accompanied by, and Drs. Hankins and McIntyre do not note, relevant medical evidence in support of their opinions.[7] (*See* R. 308 [SSA Ex. 9F]; R. 348 [SSA Ex. 14F]). Neither Dr. Hankins nor Dr. McIntyre makes findings as to Moore's functional limitations that would support their opinions. (*See* R. 308 [SSA Ex. 9F]; R. 348 [SSA Ex. 14F]). Dr. Hankins's opinion, in particular, is restricted to Moore's ability to perform the type of work Moore performed at his previous place of employment, Reynolds Ready Mix, without an opinion as to Moore's ability to perform other work. (*See* R. 348 [SSA. Ex. 14F]).

As to the medical evidence, on December 9, 2012, an X-ray was performed on Moore at Springhill Medical Center. (R. 225 [SSA Ex. 1F]). Thomas Vanderheyden, M.D., diagnosed Moore with sciatica and found no acute abnormality of Moore's lumbar spine. (R. 225 [SSA Ex. 1F]).

Moore presented himself for a physical examination at Ronderos Neurosurgery Center on December 12, 2012, where he complained to Juan F.

---

[7] "The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion. The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion." 20 C.F.R. § 404.1527(c)(3).

Ronderos, M.D., of lower back pain that radiated to Moore's right buttock; posterior aspect of his right hip, thigh, knee, and calf; and entire right, lower extremity. (R. 244 [SSA Ex. 3F]). An MRI was performed on Moore that revealed lumbar intervertebral disc myelopathy and lower back pain. (R. 246 [SSA Ex. 3F]). On December 13, 2012, Dr. Ronderos performed a right L5-S1 laminotomy with a medial facetectomy and foraminotomy with microlumbar disketomy on Moore. (R. 241 [SSA Ex. 2F]). Moore's preoperative diagnosis was a herniated nucleus pulposus located at right L5-S1. (R. 241 [SSA Ex. 2F]). Follow up visits to Dr. Ronderos by Moore show Moore had improved drainage of his operation incision, (*compare* R. 251 [SSA Ex. 3F] *with* R. 254 [SSA Ex. 3F]), but complained of soreness, (R. 254 [SSA Ex. 3F]); however, Moore's gait and station improved to normal, his movement in and out of a chair was smooth and well coordinated, and he had no difficulty changing positions on the examination table, (R. 256 [SSA Ex. 3F]). This is in contrast to a post-operation follow-up visit to Atmore Community Hospital Family Physicians on January 17, 2013, at which Moore reported lower back pain and a pain severity of nine out of a possible ten. (R. 265 [SSA Ex. 5F]). Moore reported the same information to Atmore Community Hospital Family Physicians on February 18, 2013 at From a March 6, 2013, examination visit with Dr. Ronderos, it was noted Moore continued to complain about lower back pack and was unable to perform physical therapy due to financial issues, but Dr. Ronderos noted a normal gait and station. (R. 291 & 293 [SSA

Ex. 7F]). Moore's symptoms continued through his March 27, 2013, examination visit with Dr. Ronderos, at which an MRI was performed. (R. 288 & 290 [SSA Ex. 7F]). Moore's MRI showed his postoperative changes, no evidence of disc abnormality, and a left lateral disc extrusion at the L3-L4 level displacing the L3 nerve root posteriorly and laterally. (R. 287 [SSA Ex. 7F]). Dr. Ronderos's assessment of Moore's MRI results on April 8, 2013, was lumbar intervertebral disc without myelopathy, lower back pain, and thoracic or lumbosacral neuritis or radiculitis. (R. 283 [SSA Ex. 7F]). An electromyography ("EMG") was performed on Moore by Theodore Kopp, M.D., M.S., on April 8, 2013, and Dr. Kopp noted Moore's results were within normal limits, and Moore exaggerated generalized lower body reactions in anticipation of, and in reaction to, nerve conduction studies. (R. 277 [SSA Ex. 7F]).

After Moore's operation, he visited the Atmore Community Hospital Family Physicians from April to October 2013. (R. 295-301 [SSA Ex. 8F]). Records of his visits show his pain levels reduced, except during the morning hours, Moore's pain level was increased. (*See* R. 295-301 [SSA Ex. 8F]). Otherwise, no abnormalities were noted by the Atmore Community Hospital Family Physicians. (*See* R. 295-301 [SSA Ex. 8F]).

On March 12, 2014, Eyston Hunte, M.D., performed a consultative examination of Moore. (R. 334-37 [SSA Ex. 12F]). Dr. Hunte noted in regard to Moore's cervical spine no deformities, spasms, tenderness, or crepitus, and

Moore's range of motion was normal. (R. 335 [SSA Ex. 12F]). Moore's range of motion for his upper and lower extremities was normal, (R. 335-36 [SSA Ex. 12F]). Moore's gait was normal, squat caused him to complain about pain in his lower back, toe walk was normal, and heel walk was normal. (R. 336 [SSA Ex. 12F]). Moore's dorsolumbar spine range of motion was somewhat restricted. (R. 336 [SSA Ex. 12F]). Moore reported significant pain during a straight leg raising test. (R. 336 [SSA Ex. 12F]). Dr. Hunte noted Moore was able to dress and undress for the exam, get on and off the examination table, ambulate, and perform daily activities of living at home, but Moore was unable to drive. (R. 336 [SSA Ex. 12F]). Dr. Hunte diagnosed Moore with chronic postoperative pain, postlaminectomy syndrome to his lumbar region, and hypertension. (R. 336 [SSA Ex. 12F]).

Dr. Hunte, in a "Medical Source Statement of Ability to do Work-Related Activities (Physical)" form, opined Moore could frequently[8] lift and carry up to ten (10) pounds, occasionally[9] lift and carry eleven (11) to twenty (20) pounds, and never lift and carry twenty-one (21) to fifty (50) pounds and fifty-one (51) to one hundred (100) pounds. (R. 338 [SSA Ex. 12F]). Dr.

---

[8] "Frequently" is defined in the "Medical Source Statement of Ability to do Work-Related Activities (Physical)" form as "one-third to two-thirds of the time" and "time" defined as "8 hours a day, for 5 days a week, or an equivalent work schedule." (R. 338 [SSA Ex. 12F]).

[9] "Occasionally" is defined in the "Medical Source Statement of Ability to do Work-Related Activities (Physical)" form as "very little to one-third of the time" and "time" defined as "8 hours a day, for 5 days a week, or an equivalent work schedule." (R. 338 [SSA Ex. 12F]).

Hunte opined Moore could, at one time without interruption, sit and walk for two (2) hours and stand for one (1) hour; in an eight (8) hours work day, Moore could sit for four (4) hours, and stand and walk for two (2) hours; Moore would need to lie down, due to back pain, two (2) to four (4) hours in an eight (8) hours work day[10]; required the use of a cane to ambulate, which was medically necessary, but could ambulate one hundred (100) yards without the use of a cane and could use his free hand to carry small objects. (R. 339 [SSA Ex. 12F]). Further, Dr. Hunte opined Moore could frequently reach (overhead), reach (all other), handle, finger, and feel with his right and left hands; occasionally push/pull with his right and left hands; never operate foot controls with his left and right feet; occasionally climb stairs and ramps, balance, stoop, kneel, crouch, and crawl, and never climb ladders or scaffolds. (R. 340-41 [SSA Ex. 12F]). Dr. Hunte opined Moore could never tolerate unprotected heights and vibrations, and occasionally tolerate moving mechanical parts, operating a motor vehicle, humidity and wetness, extreme cold and heat, and dust, odors, fumes, and pulmonary irritants. (R. 342 [SSA Ex. 12F]). Finally, Dr. Hunte opined Moore could perform activities like shopping; travel without a companion for assistance; ambulate without using

_____

[10] However, the "Medical Source Statement of Ability to do Work-Related Activities (Physical)" form prompt for Dr. Hunte's opinion that Moore needs to lie down for two (2) to four (4) hours reads: "If the total time for sitting, standing and walking does not equal or exceed 8 hours, what activity is the individual performing for the rest of the 8 hours?" (R. 339 [SSA Ex. 12F]). The total time for sitting (4), standing (2), and walking (2) Dr. Hunte indicated Moore could perform in an eight (8) hour work day equals eight (8), so Dr. Hunte's note that Moore would need to lie down for two (2) to four (4) in an eight (8) hours work day is inexplicable.

a wheelchair, walker, or two (2) canes or two (2) crutches; walk a block at a reasonable pace on rough or uneven surfaces; use standard public transportation; climb a few steps at a reasonable pace with the use of a single hand rail; prepare a simple meal and feed himself; care for his personal hygiene; and sort, handle, or use paper/files; but stated Moore should not participate in manual labor, bending, lifting or carrying. (R. 343 [SSA Ex. 12F]).

Office visit records for Moore from the Atmore Family Physicians for visits that occurred on March 18, 2014, and April 24, 2014, show Moore was diagnosed with lower back pain, hypertension, and carpal tunnel syndrome in his wrists. (R. 349-50 [SSA Ex. 15F]).

At the oral hearing held on June 24, 2014, Moore testified he is able to shop in stores, (R. 52); is able to walk for between ten (10) and twenty (20) minutes, (R. 52); stand for thirty (30) minutes, (R. 53); sit for between one (1) and two (2) hours, (R. 53); prepare simple meals, (R. 65); and perform household tasks for between ten (10) and thirty (30) minutes at a time, (R. 66). Moore testified he does not feel pain from his ailments when he takes his medication, which causes drowsiness. (R. 52, 62-63, & R. 176 [SSA Ex. 2E]).

In sum, the medical evidence of record, Moore's reported capabilities, and the functional capacities determined by Dr. Hunte, do not support the opinion of Dr. McIntyre, which was stated in a form dated November 7, 2013,

(R. 308 [SSA Ex. 9F]), that Moore is not able to engage in any form of gainful employment without missing more than two (2) days of work per month or experiencing frequent interruptions to his work routine due to symptoms of his medical problems. Dr. Hankins's opinion, which was stated in a form titled "Medical Examiner's Certificate" dated May 20, 2013, (R. 348 [SSA Ex. 14F]), that Moore is unable to perform the functions of his job at Reynolds Ready Mix is not, necessarily, contradicted by the evidence of record but does not foreclose Moore's ability to perform the functions of other jobs in the economy.

As to Moore's argument the ALJ adopted her own medical opinion when she failed to assign controlling weight to the opinions of Moore's treating physicians, the Court rejects this assertion. While the Social Security regulations require ALJs to consider all medical opinions in the record when making a disability determination, *see* 20 C.F.R. §§ 404.1527(b) & 416.927(b), "[n]othing in the regulations requires the ALJ to accept at least one medical opinion before rendering a decision—indeed, an ALJ may make a disability determination without any medical opinion in the record." *Hale v. Colvin*, Civil Action No. 14-00222-CG-N, 2015 WL 3397939, at *11 (S.D. Ala. Apr. 24, 2015), *report and recommendation adopted*, 2015 WL 3397628 (S.D. Ala. May 26, 2015); *see also Packer v. Astrue*, Civil Action No. 11-0084-CG-N, 2013 WL 593497, at *3 (S.D. Ala. Feb. 14, 2013) ("[T]he ALJ is not precluded from making a proper RFC determination in the absence of an opinion from

an acceptable medical source." (quotation omitted)), *aff'd*, *Packer v. Comm'r, Soc. Sec. Admin.*, 542 F. App'x 890 (11th Cir. Oct. 29, 2013) (per curiam); *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) ("[T]here is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question. The ALJ, not a physician, is charged with determining a claimant's RFC from the medical record." (quotation omitted)); 20 C.F.R. §§ 404.1527(a)(2) & 416.927(a)(2) ("Evidence that you submit or that we obtain **may** contain medical opinions." (emphasis added)); 20 C.F.R. §§ 404.1546 & 416.946 ("If your case is at the [ALJ] hearing level . . . , the [ALJ] . . . is responsible for assessing your residual functional capacity."). The ALJ properly assigned little and no weight to Dr. McIntyre's and Dr. Hankins's opinions, respectively, *see supra*, and as the Court will discuss, *infra*, the ALJ properly assigned no weight to the opinion of the state agency consultant, Dr. Hunte.[11] Accordingly, the ALJ was not required to "fully reflect" those opinions in the RFC.

"A clear articulation of both fact and law is essential to our ability to conduct a review that is both limited and meaningful." *Owens v. Heckler*, 748 F.2d 1511, 1514-15 (11th Cir. 1984) (per curiam). *See also Freeman v. Barnhart*, 220 F. App'x 957, 959-60 (11th Cir. Mar. 23, 2007) (per curiam)

---

[11] Moreover, the opinion of a non-examining physician "is entitled to little weight and taken alone does not constitute substantial evidence to support an administrative decision." *E.g., Swindle v. Sullivan*, 914 F.2d 222, 226 n.3 (11th Cir. 1990) (per curiam).

("The ALJ has a duty to make clear the weight accorded to each item of evidence and the reasons for the decision so that a reviewing court will be able to determine whether the ultimate decision is based on substantial evidence." (citing *Cowart v. Schweiker,* 662 F.2d 731, 735 (11th Cir. 1981))). Nevertheless, "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is not enough to enable the district court . . . to conclude that [the ALJ] considered her medical condition as a whole." *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam) (internal quotation marks omitted). In formulating the RFC at Step Four, the ALJ thoroughly discussed and weighed the evidence of record and drew conclusions from that evidence. Apart from the weight the ALJ assigned the three above-mentioned medical opinions, Moore points to no evidence the ALJ allegedly incorrectly or insufficiently assessed. Rather, Moore appears to assert only that the ALJ failed to adequately show her work in applying Social Security Ruling 96-8p. However, both this Circuit and others have repeatedly rejected similar contentions that an ALJ's failure to expressly show his or her work under SSR 96-8p is automatic grounds for reversal. *See Freeman*, 220 F. App'x at 959-60 ("Freeman contends that the ALJ failed to identify her functional limitations and work-related abilities on a function-by-function basis . . . . While the ALJ could have been more specific and explicit in his findings, he did consider all of the evidence and found that it

did not support the level of disability Freeman claimed. Only after he determined that she failed to carry her burden of showing that she had become disabled from performing any of her work-related activities did he state that she could perform light exertional activity. Therefore, the ALJ complied with SSR 96–8p by considering Freeman's functional limitations and restrictions and, only after he found none, proceeding to express her residual functional limitations in terms of exertional levels. Furthermore, the ALJ's analysis of the evidence and statement that Freeman could perform light work indicated how much work-related activity she could perform because 'light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8–hour workday.' SSR 83–10."); *Castel v. Comm'r of Soc. Sec.*, 355 F. App'x 260, 263 (11th Cir. Nov. 30, 2009) ("Castel argues that the ALJ reached an RFC determination without going through a function-by-function analysis. Specifically, Castel claims that the ALJ did not perform the function-by-function analysis to determine Castel's ability to handle strength demands. This argument is unfounded. The ALJ made a determination of Castel's RFC at step four of the function-by-function analysis. The ALJ considered two disability examiners' reports, Castel's testimony, and two Disability Determination Services' ('DDS') reports in arriving at Castel's RFC. *See* SSR 96–8p . . . (advising that the RFC assessment must consider all relevant evidence, including medical history, medical evaluations, daily activities, and lay evidence). The ALJ ultimately

decided that Castel was capable of medium exertion level work and thus was capable of performing past relevant work . . . . We do not require the ALJ to 'specifically refer to every piece of evidence in his decision,' so long as the decision is sufficient to allow us to conclude that the ALJ considered the claimant's medical condition as a whole. *Dyer v. Barnhart,* 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam). The ALJ found that the medium level work determination was consistent with the medical evidence and found Castel's RFC to be at a medium level of work. The ALJ performed a proper RFC function analysis, based on substantial evidence, and we shall defer to his conclusions."); *Carson v. Comm'r of Soc. Sec.*, 440 F. App'x 863, 864 (11th Cir. Sept. 21, 2011) (per curiam) ("Following [SSR 96-8p's 'function-by-function'] rubric, the ALJ fully discussed and evaluated the medical evidence, Mr. Carson's testimony, and the effect each impairment has on his daily activities. While, the ALJ did not specifically refer to Mr. Carson's ability to walk or stand, the ALJ did limit Mr. Carson's exertional level of work to 'light work.' 'Light work' by definition limits the amount an individual can walk or stand for approximately six hours in an eight-hour work day. *See* SSR 83–10, 1983 WL 31251 (S.S.A.). Furthermore, the ALJ's thorough evaluation of Mr. Carson's case led the ALJ to adopt additional limitations to Mr. Carson's ability to perform light work. Simply because the ALJ chose not to adopt further limitations on Mr. Carson's ability to walk or stand, does not mean the ALJ did not properly consider the alleged limitations."); *Cichocki v.*

*Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) ("Where an ALJ's analysis at Step Four regarding a claimant's functional limitations and restrictions affords an adequate basis for meaningful judicial review, applies the proper legal standards, and is supported by substantial evidence such that additional analysis would be unnecessary or superfluous, we agree with our sister Circuits that remand is not necessary merely because an explicit function-by-function analysis was not performed." (citing *Zatz v. Astrue*, 346 F. App'x 107, 111 (7th Cir. Oct. 5, 2009) (per curiam); *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005); *Depover v. Barnhart*, 349 F.3d 563, 567–68 (8th Cir. 2003); *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547 (6th Cir. Mar. 4, 2002) (per curiam)); *Chavez v. Astrue*, 276 F. App'x 627, 627-28 (9th Cir. May 1, 2008) (per curiam) ("Chavez claims that the ALJ committed legal error by determining his mental residual functional capacity without performing a function-by-function assessment as required by Social Security Ruling 96-8p, 1996 WL 374184, at *3 (July 2, 1996). This claim fails because the ALJ considered and noted 'all of the relevant evidence' bearing on Chavez's 'ability to do work-related activities,' as required by the function-by-function analysis. *See* [SSR] 96-8p, 1996 WL 374184, at *3."); *Hendron v. Colvin*, 767 F.3d 951, 956-57 (10th Cir. 2014) (rejecting claimant's contention that the ALJ's "RFC is not in the proper form" because the ALJ did not "separately discuss and make findings regarding her abilities to sit, stand, walk, lift, carry, push, or pull" (citing *Keyes–Zachary v. Astrue*, 695 F.3d

1156, 1166 (10th Cir. 2012) ("Where, as here, we can follow the adjudicator's reasoning in conducting our review, and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal. In conducting our review, we should, indeed must, exercise common sense . . . . [W]e cannot insist on technical perfection.")).

Therefore, the Court finds good cause for the ALJ's decision to assign minimal weight to the opinion of Moore's treating physicians, Drs. Hankins and McIntyre, set forth in a form titled "Medical Examiner's Certificate" dated May 20, 2013, (R. 348 [SSA Ex. 14F]), and a form dated November 7, 2013, (R. 308 [SSA Ex. 9F]), and the Court finds the ALJ's decision is supported by substantial evidence. Accordingly, the Court **OVERRULES** Moore's assertions of error in Claim 1.

## B. Claim 2

Under Social Security Ruling 96-6p:

> The opinions of State agency medical and psychological consultants and other program physicians and psychologists can be given weight only insofar as they are supported by evidence in the case record, considering such factors as the supportability of the opinion in the evidence including any evidence received at the Administrative Law Judge and Appeals Council levels that was not before the State agency, the consistency of the opinion with the record as a whole, including other medical opinions, and any explanation for the opinion provided by the State agency medical or psychological consultant or other program physician or psychologist.

SSR 96-6p *rescinded and replaced by* SSR 17-2p.[12]  However, only a treating physician's opinion may be given controlling weight.  *See* 20 C.F.R. § 404.1527(c)(2) ("If we find that a treating source's medical opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported, . . . we will give it controlling weight."); *see also id.* ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.").  Additionally, if a treating source's opinion is not given controlling weight:

> [T]he [ALJ] must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician or psychologist, as the [ALJ] must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for [the SSA].

20 C.F.R. § 416.927(f)(2)(ii).

On March 12, 2014, Dr. Hunte performed a consultative examination of Moore.  (R. 333-43 [SSA Ex. 12F]).  The ALJ found persuasive Dr. Hunte's opinion that Moore can perform a reduced range of light work, which is found in a "Medical Source Statement of Ability to do Work-Related Activities (Physical)" form.  (R. 27).  The ALJ stated the limitations Dr. Hunte indicated

---

[12] Social Security Ruling 17-2p became effective on March 27, 2017.

of Moore were consistent with much of the evidence of record, but Dr. Hunte's opinion that Moore would need to lie down for two (2) to (4) hours per day due to back pain was not consistent with his examination findings or the evidence of record. (R. 27-28). Therefore, the ALJ assigned no weight to Dr. Hunte's opinion. (R. 28).

The Court previously summarized Dr. Hunte's findings in a "Medical Source Statement of Ability to do Work-Related Activities (Physical)" form, *supra* at 18-20, and noted Dr. Hunte's opinion that Moore needs to lie down for two (2) to four (4) hours during an eight (8) hour work day, *supra* note 10, at 19, was an inappropriate response to the prompted question since Dr. Hunte indicated Moore could sit, stand, and walk for a total of eight (8) hours during an eight (8) hour work day, (R. 339 [SSA Ex. 12F]). There is no additional medical evidence in the record that Moore needs to lie down throughout the day. (*See* Doc. 12). Dr. Hunte, also, noted Moore could not perform work-related manual labor that included bending, lifting, and carrying, but Dr. Hunte's note contradicts the functional limitations and postural activities that Dr. Hunte indicated Moore could perform. (*Compare* R. 338 & 341 [SSA Ex. 12F] *with* R. 343 [SSA Ex. 12F]).

Therefore, the Court finds good cause for the ALJ's decision to assign no weight to the opinion of Moore's consulting, examining physician, Dr. Hunte, and the Court finds the ALJ's decision is supported by substantial evidence. Accordingly, the Court **OVERRULES** Moore's assertion of error in

Claim 2.

## V. <u>Conclusion</u>

In accordance with the foregoing analysis, it is **ORDERED** that the Commissioner's final decision issued April 28, 2016, denying Moore's applications for PoD and DIB is **AFFIRMED** under 42 U.S.C. § 405(g) and 1383(c)(3).

Final judgment shall issue separately in accordance with this Order and Rule 58, FED. R. CIV. P.

**DONE** and **ORDERED** this the 15th day of August 2017.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**